## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LILLIAN ANAYA and MEL ANAYA,

      Plaintiffs,

vs.                                  No. CIV-06-476 JB/KBM

CBS BROADCASTING INC.,
SHARYL ATTKISSON,
EMMIS COMMUNICATIONS, CORP.,
AMP PARTS AND PERFORMANCE, a
division of TRI-CITY AUTO SALES,
INC., and THOMAS THOMPSON in his
official and individual capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion and Memorandum of Law in

Support of Defendant CBS Broadcasting Inc.'s Motion to Compel, filed October 25, 2006 (Doc.

29)("Motion"). The Court held a hearing on the motion on February 5, 2007. At the hearing, the

Court ruled on a number of CBS Broadcasting Inc.'s requests to compel production, granting them

in part and denying them in part. The primary issues remaining are: (i) whether, and to what extent,

subject-matter waiver is applicable to the discovery of documents in this case; and (ii) whether Los

Alamos National Security, LLC ("LANS") and the Regents of the University of California

("University") waived attorney-client and work-product privileges as to documents they provided

to Congress. Because the Court concludes that LANS and the University waived the attorney-client

privilege and attorney work-product protection as to the documents they submitted to Congress, and

because the Court believes that the subject-matter waiver doctrine applies to discovery in this case,

the Court will find in favor of CBS Broadcasting Inc. ("CBS") with regard to the issues remaining

to be decided and grant the motion in part.

## PROCEDURAL BACKGROUND

On August 17, 2005, Plaintiffs Lilian and Mel Anaya filed their Complaint for Violation of the California Information Practices Act, Defamation, Negligence, Breach of Contract, Constructive Discharge, Breach of the Implied Covenant of Good Faith and Fair Dealing, Intentional Infliction of Emotional Distress, False Light Invasion of Privacy, Appropriation of Name and Likeness, Fraud, Prima Facie Tort, and Loss of Consortium against Defendants the University, LANS, Glenn Walp, Steve Doran, John Doe #1, John Doe #2, Joseph Salgado, CBS, Emmis Communications, Corp., Tri-City Auto Sales, Inc., AMP Performance, and Thomas Thompson, in the First Judicial District Court of the State of New Mexico. See Notice of Removal, filed June 8, 2006 (Doc. 1), Exhibit A at 1. In May 2006, the Anayas settled with LANS, the University, Walp, Doran, and Salgado; the claims against those Defendants were dismissed. See Motion at 2. On June 8, 2006, the remaining Defendants removed the action, pursuant to 28 U.S.C. §§ 1441 and 1446, to federal Court. See Notice of Removal at 1.

The requests for production that are at issue were originally served on LANS and the University on February 8, 2006, when LANS and the University were still parties to the action. See Motion at 9. On April 21, 2006, LANS and the University served their responses and objections to CBS' document requests. See id. At the time LANS and the University were dismissed from the case, however, they had not completed their promised production. See id.

LANS and the University requested that CBS re-issue its document requests by subpoena pursuant to rule 45 of the Federal Rules of Civil Procedure. See id. CBS agreed to the request. See id. LANS and the University now contend that document production is complete and that the privilege log is in final form. See id. LANS and the University represent that they have diligently

and comprehensively searched for relevant documents within their possession, custody, and control, and that they have produced all non-privileged documents responsive to CBS' requests. See Los Alamos National Security, LLC's and Regents of the University of California's Response in Opposition to CBS Broadcasting Inc.'s Motion to Compel at 1, filed December 5, 2006 (Doc. 44)("Response").

On October 25, 2006, CBS filed its motion to compel, seeking an order from the Court compelling LANS and the University to produce documents that they allegedly have improperly been withholding or redacted. See Motion at 1. Before the hearing on CBS' motion to compel, the parties, independently of the Court, reached agreement on several of the issues raised in CBS' motion. See Response at 4. As of the date of the hearing, the following production requests and issues remained in dispute: (i) clarification of the documents LANS and the University have produced and/or withheld, see Hearing Transcript at 3:23-4:15 (Court)(taken February 5, 2007)("Transcript")("February 5 Transcript"):[1] (ii) production of documents relating to G&G Industrial Supply ("G&G"), see id. at 8:6-12 (Court); (iii) production of documents relating to other purchasing controversies and accusations that LANS and the University participated in a cover up, see id. at 27:11-13 (Court); (iv) production of documents concerning others' inappropriate use of purchase cards, see id. 34:14-18 (Court); (v) production of documents concerning non-Anaya criminal allegations involving laboratory purchasing and property management systems, see id. at 43:13-16 (Court), id. at 47:11-12; (vi) the applicability and scope of subject-matter waiver, see id. at 54:1-25 (Court), id. at 57:20-24 (Court), id. at 64:15-20 (Court); (vii) the privilege status of documents LANS and the University provided to Congress, see 65:2-8 (Court); (viii) production of

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

documents relating to settlement negotiations between the Anayas, LANS, and the University, see id. at 71:8-9 (Court); and (ix) production of the documents relating to the investigation the Federal Bureau of Investigation ("FBI") conducted, see id. at 74:1-6 (Court).

The Court definitively ruled on a number of these issues at the hearing. With respect to clarifying which documents LANS and the University provided and/or withheld, the Court ruled, based upon the representation of counsel for LANS and the University that all responsive documents have either been produced or listed in the privilege log, see id. at 7:10-8:1 (Bieg), that the issue is moot.

Concerning the G&G documents, the Court ruled that LANS and the University must confirm that they have produced all documents relating to any investigation of G&G, including those relating to Orlando Smith, that LANS and the University must produce e-mails relating to any such investigations, and that LANS and the University must produce documents concerning G&G's termination as a supplier. See id. at 24:17-26:15 (Court). The Court ruled that LANS and the University do not have to produce documents relating to underlying transactions with G&G beyond those concerning Anaya; the Court made this ruling without prejudice so that CBS could renew its request if discovery developments warrant. See id.

With regard to documents relating to other purchasing controversies and accusations that LANS and the University participated in a cover up, the Court ruled, without prejudice to CBS renewing its request if future developments warrant, that LANS and the University do not have to produce documents concerning other, non-Anaya, investigations that Walp and Doran conducted. See id. at 34:3-12 (Court).

Regarding documents concerning others' inappropriate use of purchase cards, the Court ruled that LANS and the University must produce documents relating to the transactions underlying

-4-

investigative reports concerning others' inappropriate use of purchase cards.  See id. at 36:23-37:4 (Court); id. at 39:19-40:1 (Court); id. at 43:1-9 (Court).

With respect to documents concerning non-Anaya criminal allegations involving laboratory purchasing and property management systems, the Court ruled, without prejudice to CBS renewing its request if future developments warrant, that LANS and the University do not have to produce documents relating to purchasing system investigations, but that LANS and the University must produce documents concerning property management and credit card purchasing procedures.  See id. at 49:13-51:1 (Court).

Concerning documents relating to settlement negotiations between the Anayas, LANS, and the University, the Court ruled that LANS and the University must produce such documents.  See id. at 73:18-25 (Court).

With regard to documents relating to the FBI's investigation, the Court ordered LANS, the University, and the FBI to produce those materials.  See id. at 76:11-77:7 (Court).

The Court did not rule on the subject-matter waiver issue or the waiver effect of production for Congress at the hearing.  As such, those two issues remain to be decided.

## LAW REGARDING DOCUMENT DISCOVERY

While discovery in federal court is very broad, the attorney-client privilege and the attorney work-product protection set boundaries on what litigants can obtain.  In a diversity case, state law governs the scope of the attorney-client privilege, whether there has been a waiver, and the scope of any waiver.  Federal law, however, continues to govern all issues related to the work-product protection.

-5-

1.      **Scope of Discovery.**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  Courts should liberally construe the scope of discovery under rule 26; "the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case."  Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 237 F.R.D. 618, 621 (N.D. Cal. 2006)(citing Oakes v. Halvorsen Mar. Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998)).  The attorney-client privilege and work-product protection limit, however, the broad scope of permissible discovery.  See Bd. of Trustees of Leland Stanford Junior University v. Roche Molecular Sys., Inc., 237 F.R.D. at 621-22.

2.      **Attorney-Client Privilege.**

"The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."  Trammel v. United States, 445 U.S. 40, 51 (1980).  The privilege's purpose is "to encourage clients to make full disclosure to their attorneys."  Fisher v. United States, 425 U.S. 391, 403 (1976).  Pursuant to rule 501 of the Federal Rules of Evidence, state law supplies the rules concerning attorney-client privilege in diversity cases.  See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 699 (10th Cir. 1998).

Under New Mexico law, the attorney-client privilege applies to "confidential

communications made for the purpose of facilitating the rendition of professional legal services to the client." Bd. of Comm'rs of Dona Ana County v. Las Cruces Sun News, 2003-NMCA-102, ¶ 25; N.M.R.A.11-503(B).   The party asserting the attorney-client privilege bears the burden of demonstrating that it applies and that it has not been waived.   See Pina v. Espinoza, 2001-NMCA-055, ¶ 24 (stating that the party asserting attorney-client privilege must demonstrate the attorney-client privilege's applicability)(citing State v. Gallegos, 92 N.M. 370, 378, 588 P.2d 1045, 1053 (Ct. App.1978)); United Nuclear Corp. v. Gen. Atomic Co., 96 N.M. 155, 217, 629 P.2d 231, 293 (1980)("The bald assertion that production of the requested information would violate a privilege (provided by law) is not enough.   The party resisting discovery has the burden to clarify and explain its objections and to provide support therefor.   General objections without specific support may result in waiver of the objections.")(internal quotations omitted).

### 3.   Work-Product Protection.

In diversity cases, rule 26(b)(3) of the Federal Rules of Civil Procedure governs work-product issues.   See Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d at 702 n.10.   Rule 26(b)(3) states:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under . . . this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.   In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).   The attorney work-product protection is based on the recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by

opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495, 510 (1947). "[T]he work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." Citizens Progressive Alliance v. U.S. Bureau of Indian Affairs, 241 F. Supp. 2d 1342, 1358 (D.N.M. 2002)(Smith, Magistrate J.)(citing United States v. Nobles, 422 U.S. 225, 238 (1975)).

"Ordinary work product generally refers to materials that are gathered at the request of an attorney in anticipation of litigation. This type of work product receives less protection than opinion work product. Opinion work product is, basically, the mental impressions of the attorney." Sinclair Oil Corp. v. Texaco, Inc., 208 F.R.D. 329, 334 (N.D. Okla. 2002).

The work-product protection includes not only the attorney's product, but also the product of the attorney's agents. See United States v. Nobles, 422 U.S. at 238-39 ("[T]he doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself."); Alexander v. FBI, 192 F.R.D. 12, 18 (D.D.C. 2000)("The caselaw dealing with attorneys' investigators shows that they should generally be afforded the same protection as the attorneys for whom they work.").

The party asserting the work-product protection has the burden of demonstrating that it applies and that it has not been waived. See Kovacs v. Hershey Co., No. 04-cv-01881, 2006 WL 2781591, at *10 (D. Colo. September 26, 2006). For the work-product doctrine to apply, the asserting party must show that the documents or materials were prepared in anticipation of litigation by or for a party or that party's representative. See Fed. R. Civ. P. 26(b)(3). Litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation. See Fox v. California Sierra Fin. Servs., 120 F.R.D. 520, 524 (N.D. Cal. 1988)("There is no requirement that the litigation have already

commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation.").

If the party asserting the work-product protection establishes entitlement to the protection, rule 26(b)(3) allows production of attorney work-product materials "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  Fed. R. Civ. P. 26(b)(3).

4.    **Waiver.**

New Mexico law severely limits the circumstances to which waiver applies.  Nevertheless, the Court believes that rule 11-511 of the New Mexico Rules of Evidence can be fairly read to allow a court to find subject-matter waiver.  The Court also believes, however, that under federal law, the concept of subject-matter waiver does not apply to the work-product doctrine.

a.    **Waiver Generally.**

Both New Mexico's attorney-client privilege and the federal work-product privilege may be waived by voluntary disclosure and offensive use of protected materials during discovery.  With respect to New Mexico law governing waiver of the attorney-client privilege, rule 11-511 of the New Mexico Rules of Evidence provides:

> A person upon whom these rules confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication.  This rule does not apply if the disclosure is itself a privileged communication.

N.M.R.A. 11-511.  Under New Mexico law, rule 11-511 exclusively governs the waiver of attorney-client privilege; rule 11-511 restricts waiver to consent to disclosure.  See Pub. Serv. Co. of New Mexico v. Lyons, 2000-NMCA-077, ¶¶ 23, 31, 10 P.3d 166, 173, 175.

With regard to voluntary waiver of the work-product protection, "production of work-product material during discovery waives a work-product objection." In re Qwest Commc'ns Int'l, Inc., 450 F.3d 1179, 1186 (10th Cir. 2006)(citing Grace United Methodist Church v. City of Cheyenne, 427 F.3d 775, 801-02 (10th Cir. 2005), and Foster v. Hill, 188 F.3d 1259, 1272 (10th Cir. 1999)). The United States Court of Appeals for the Tenth Circuit has narrowly construed that rule, refusing to adopt selective waiver and finding waiver in situations where documents that work-product protection would otherwise protect are mistakenly sent to adversaries. See In re Qwest Commc'ns Int'l, Inc., 450 F.3d at 1189, 1201. The Tenth Circuit has also foreclosed abusive offensive use of the work-product doctrine: "[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." Frontier Refining Inc., v Goman-Rupp Co., Inc., 136 F.3d at 704. Such offensive use constitutes waiver of the protection. See id.

**b.      Subject-Matter Waiver and the Attorney-Client Privilege.**

While New Mexico courts have not yet ruled on subject-matter waiver as it pertains to attorney-client privilege, "there is substantial case law supporting [the] position that as a matter of law, any voluntary waiver of [] confidential communications waives the privilege as to all confidential communications regarding the same subject matter." Murray v. Gemplus Int'l, S.A., 217 F.R.D. 362, 366 (E.D. Penn. 2003)(internal quotations omitted)(citing Edwards v. Whitaker, 868 F. Supp. 226, 229 (M.D. Tenn. 1994)("With regard to the issue of the extent of waiver, it is well-established that 'voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.'")(quoting Weil v. Inv./Indicators, Research & Mgmt., 647 F.2d 18, 24 (9th Cir. 1981)).

-10-

In <u>Public Service Company of New Mexico v. Lyons</u>, the Court of Appeals of New Mexico considered approaches to the "at-issue" waiver doctrine. <u>See</u> 2000-NMCA-077, ¶¶ 15-26, 10 P.3d at 171-74. In reaching it decision, which was "limited to the 'at-issue' waiver theory," <u>id.</u>, ¶ 32, 10 P.3d at 176, the court made clear its preference for a constrained and consistent waiver based entirely on rule 11-511. The <u>Lyons</u> court stated that "[New Mexico] courts must adhere closely to waiver as defined in Rule 11-511 and are not free to engage in ad hoc rule-making and waiver analysis," that "[i]n light of New Mexico's rule-bound law of privilege and the absence of Supreme Court case law to the contrary . . . the issue of waiver should be governed by, and limited to, Rule 11-511," and that "[New Mexico's] rules reflect a careful, methodical, approach to the development of the rules governing privileges -- one that involves public participation and discourages ad hoc judicial intervention." <u>Id.</u> ¶¶ 14, 23, 10 P.3d at 171, 173.

Despite the general tenor of <u>Public Service Company of New Mexico v. Lyons</u>, the Court does not believe that the case forecloses subject-matter waiver of the attorney-client privilege in the state of New Mexico; rather, based on multiple considerations, the Court believes that the New Mexico courts would endorse subject-matter waiver with regard to attorney-client privilege if confronted with the issue. First of all, the parties have not cited, and the Court is not aware of, any federal or state appeals court that has refused to adopt subject-matter waiver in the attorney-client privilege context when confronted with the issue.[2] The great weight of authority supports the doctrine of subject-matter waiver. <u>See</u> <u>Murray v. Gemplus Int'l, S.A.</u>, 217 F.R.D. at 366; <u>Edwards v. Whitaker</u>, 868 F. Supp. at 229. Most important, New Mexico courts have not barred application

---

[2] In their briefing and at the February 5, 2007 hearing, LANS and the University did not discuss or point to any cases refusing to endorse subject-matter waiver for attorney-client privilege.

of the subject-matter waiver doctrine and rule 11-511's use of the term "matter" suggests that it countenances, or, at the very least, does not foreclose, subject-matter waiver.  N.M.R.A. 11-511. Moreover, <u>Public Service Company of New Mexico v. Lyons</u> dealt with the existence of "voluntary waiver," not the scope of a voluntary waiver.  Rule 11-511's express language does not foreclose a subject-matter scope of the waiver, as long as the waiver of the privilege is voluntary.  The Court thus believes that the New Mexico courts would endorse subject-matter waiver of the attorney-client privilege if confronted with the issue.

> ### c.   Subject-Matter Waiver and the Attorney Work-Product Protection.

"The attorney work-product protection is based on the recognition that it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  <u>Sanchez v. Matta</u>, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)(internal quotations omitted)(quoting <u>Hickman v. Taylor</u>, 329 U.S. at 510).  The work-product protection thus shelters the "mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  <u>Sanchez v. Matta</u>, 229 F.R.D. at 654 (internal quotations omitted).

Courts are divided on whether subject-matter waiver applies to the work-product protection. Some courts maintain that subject-matter waiver applies to factual, non-opinion attorney work-product; others flatly reject subject-matter waiver's applicability to work product.  For example, in <u>In re Echostar Communications Corp.</u>, 448 F.3d 1294 (Fed. Cir. 2006), the United States Court of Appeals for the Federal Circuit stated: "[W]ork product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege.  Instead work product waiver only extends to factual or non-opinion work product concerning the same subject matter as

the disclosed work product." Id. at 1302. Cf. Sinclair Oil Corp. v. Texaco, Inc., 208 F.R.D. 329, 335 (N.D. Okla. 2002)("[A] party that produces work product documents waives the work product doctrine with regard to the subject matter of the documents [it] produces."); United States v. Martin Marietta Corp., 886 F. Supp. 1243, 1251 (D. Md. 1995)("This circuit adheres to a full subject-matter waiver rule as to the attorney-client and non-opinion work product privileges. Disclosure of a privileged communication waives the privilege as to all information related to the same subject matter."). In Pittman v. Frazer, 129 F.3d 983 (8th Cir. 1997), by contrast, the United States Court of Appeals for the Eighth Circuit held:

> If documents otherwise protected by the work-product rule have been disclosed to others with an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently be able to claim protection for the documents as work product. But disclosure of some documents does not destroy workproduct protection for other documents of the same character.

Id. at 988 (citing 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 209 (1994))(emphasis in original). See Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1422 (11th Cir. 1994)("[T]he subject-matter waiver doctrine does not extend to materials protected by the opinion work product privilege.").

The Court notes that, because the Tenth Circuit has not ruled on the issue, it has some discretion in choosing which course to follow with respect to applying the concept of subject-matter waiver to the work-product protection. The Court will adopt the positions the Eighth and Eleventh Circuits took in Pittman v. Frazer and Cox v. Adm'r U.S. Steel and Carnegie, respectively, as well as that which Professors Wright and Miller have taken in their treatise. The Court believes that extending the broad subject-matter waiver applicable to the attorney-client privilege to the work-product protection would not properly reflect the purpose of the work-product protection. See Sanchez v. Matta, 229 F.R.D. at 654 ("The attorney work-product protection is based on the

recognition that it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."). The Court believes that strategically disclosing attorney work-product is fundamental to the litigation process, and that the rule some courts have embraced applying subject-matter waiver to non-opinion work product may stifle advocacy by requiring lawyers to disclose materials that contain both opinion and non-opinion work product. While the Court could protect only opinion work product and find a subject-matter waiver for non-opinion work product, it seems that lawyers should be in control of their work product, and be allowed to strategically decide when to disclose, if ever, their work product. "The different policies behind the work product doctrine and the attorney-client privilege lead to different rules of waiver. Unlike the attorney-client privilege, which is designed to protect the client's confidences, the work product doctrine is designed to protect the adversary process." James Moore, Moore's Federal Practice § 26.70(6)(a), at 26-226 (3d. ed. 2006). The Court will thus decline to apply subject-matter waiver to the work-product protection.

### d.    The Production of Documents to Congress and Waiver.

The courts are split whether production of documents to Congress waives the attorney-client privilege and work-product protection for those documents. The Court concludes, however, that the courts that have considered, in depth, whether a party waives attorney-client privilege and work-product protection as to documents released to Congress have held that the privileges remain intact only if the party seeking to preserve them takes all reasonable efforts to do so. The Court also concludes that this is the better rule and will adopt it in this case.

The Court first acknowledges that other courts have found, to the contrary, that producing documents to Congress does not waive the attorney-client and work-product privileges as to those documents. The Court notes, however, that the one such opinion to which it had access treated the

matter only briefly and that the Court did not find that opinion's reasoning persuasive.  See Int'l

Union of Operating Eng'gs, Local No. 132, Health & Welfare Fund v. Philip Morris, Inc., No.

3:97-0708, 1999 U.S. DIST. LEXIS 21097, at *5-7 (S.D.W.Va. June 18, 1999)(holding that

production to Congress did not waive the attorney-client and work-product privileges, because the

party's written objections to subpoenas preserved the privileges).   Other courts finding that

production to Congress did not waive the attorney-client privilege and work-product protection

include:

> Scott v. American Tobacco Co., No. 96-8461 (Dist. Ct. Orleans Parish, La) . . . ;
> State of Wisconsin v. Philip Morris, No. 97-CV-328, slip op. at 7 (Cir. Ct., Dane
> City, Wis. Oct. 21, 1998) . . . ; Burton v. R.J. Reynolds, No. 94-2202-JWL (D.Kans.
> July 19, 2000) . . . ; In re Tobacco Cases II, No. JCCP-4042, slip op. at 1-2
> (Super.Ct., San Diego County, Cal. Aug 9, 1999) . . . ; Huffman v. American
> Tobacco Co., No. 98-C-276, slip op. at 3 (13th Jud. Cir., Kanawha City, W. Va. Aug.
> 4, 1999) . . . ; State of Maryland v. Philip Morris, Inc., No. 96122017, slip op. at 9,
> 12 (Cir. Ct., Baltimore City, Md. Aug 5, 1998) . . . ; State of Washington v.
> American Tobacco Co., No. 96-2- 15056-8, slip op. at 2 (Super.Ct., King County,
> Wash. March 1, 1999) . . . ; State of Missouri ex rel. Nixon v. American Brands, Inc.,
> No. 972-1465 (Cir. Ct. 22nd Jud. Dist., St. Louis City, Mo. Aug. 15, 1998) . . . .

United States v. Philip Morris Inc., 212 F.R.D. 421, 426 (D.C. Dist. 2002).

In United States v. Philip Morris Inc., the Honorable Gladys Kessler, United States District

Judge for the District of Columbia, considered whether defendants had waived the attorney-client

privilege and the work-product protection as to documents that they released to the Commerce

Committee of the United States House of Representatives.   See id. at 424-26.  In reaching her

decision, Judge Kessler noted that the defendants produced the documents to the Committee the day

after subpoenas were issued, that there was no evidence that the Chairman or Committee refused

to recognize the privilege or that the subpoenas would be enforced, that the defendants were never

directly ordered to produce the documents at a hearing, and that the Committee never voted to

enforce the subpoenas.   See id. at 425.  Judge Kessler also acknowledged that the record did not

show that the defendants ever tried to meet with the Committee's members or that the defendants ever tried to obtain a ruling from the full Committee regarding production and/or privilege. See id. at 425-26. Further, Judge Kessler noted that the only action the defendants took with respect to the documents they produced was to state in their cover letters that they were producing the documents because they had been "informed that the Committee will overrule any assertion of privilege with respect to this group of documents . . . ." Id. at 425. Judge Kessler concluded that "such a cursory explanation of the reason for compliance is insufficient to carry the defendants' burden of proving that they made all reasonable efforts to protect and preserve the privilege," stated that the "Defendants' failure to make more than a minimal effort to convince the Chairman and Committee to recognize their privilege claims is particularly telling given that Defendants and their attorneys were highly knowledgeable and experienced in dealing with Congress," and ruled that the "Defendants have waived any claims of attorney-client privilege or work product protection over the documents." Id. at 426 (citing Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, 35 F. Supp. 2d 585, 595 (N.D. Ohio 1999)).

Similarly, in Tompkins v. R.J. Reynolds Tobacco Co., 92 F. Supp. 2d 70 (N.D.N.Y. 2000), the Honorable Frederick J. Scullin, United States District Judge for the Northern District of New York, considering similar facts at issue in United States v. Philip Morris Inc., upheld a United States Magistrate Judge's ruling that the defendant had waived the attorney-client privilege and the work-product protection by producing the documents. See id. at 77-79. In doing so, Judge Scullin stated that the defendant "must show not only what steps it took to challenge the congressional subpoena, but also that those steps represent the fullest extent of options available." Id. at 77-78. Judge Scullin further commented:

[C]ase law suggests that mere objections to Congress' refusal to extend a privilege

-16-

> are insufficient to contest a congressional subpoena.  See Sanders v. McClellan, 463
> F.2d 894, 899 (D.C. Cir.1972).  Instead, a party may need to risk standing in
> contempt by refusing to comply with the subpoena, thereby causing the legislators
> to seek a contempt citation and refer the citation to the Attorney General.  See id.
> If prosecution were to result, the party could present in court its argument in favor
> of finding a privilege. See id.

92 F. Supp. 2d at 78.

In Iron Workers Local Union No. 17 Insurance Fund v. Philip Morris, the Honorable James

S. Gwin, United States District Judge for the Northern District of Ohio, considered the same issues

presented in United States v. Philip Morris Inc. and Tompkins v. R.J. Reynolds Tobacco Company,

and reached a like conclusion.  See Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris,

35 F. Supp. 2d at 594-98.  Judge Gwin, finding that the defendants waived the attorney-client

privilege and the work-product protection as to the documents they produced to Congress, stated:

> The defendants made this production without citation for contempt and without
> receiving a ruling from the Chair at a hearing of the Commerce Committee.
> Plaintiffs suggest that the defendants failure in this regard constitutes a waiver of the
> privilege.  The Court agrees.
>
> The standards employed in determining whether a party has sufficiently taken steps
> to contest a legislative subpoena are high.  Generally, a party seeking to preserve a
> claimed privilege, despite Congressional subpoena, must challenge such a subpoena
> by standing in contempt of Congress.  [Sanders v. McClellan, 463 F.2d 894, 899
> (D.C.Cir.1972)]
>
>                       \* \* \* \*
>
> In short, a party must do more than merely object to Congress' ruling.
> Instead, a party must risk standing in contempt of Congress.  See Sanders, supra;
> United States v. Bryan, 339 U.S. 323, 333 . . . (1950). It is fair for a court to require
> the witness show that some serious effort was made to convince the Chair/and or the
> committee itself to recognize the privilege claims being asserted.

Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, 35 F. Supp. 2d at 594-95 (internal

quotations omitted).

## ANALYSIS

The Court adopts herein, for the reasons given at the time of the hearing, the rulings that it made at the hearing on this motion.  As such, the Court will limit its analysis to what effect LANS' and the University's production of documents to Congress had with respect to the attorney-client privilege and the work-product protection, and to the applicability of the subject-matter waiver doctrine.  Further, because it was conceded at the February 5, 2007 hearing that the documents produced to Congress encompass those that the scope of subject-matter waiver would cover, i.e. the documents sought via subject-matter waiver are a subset of the documents that were provided to Congress, and that, as such, production based on subject-matter waiver is essentially a form of alternative relief, the Court will address the relationship between production to Congress and the attorney-client privilege and work-product protection first and then take up the issue of subject-matter waiver.

### A.   LANS AND THE UNIVERSITY WAIVED ANY PRIVILEGES THAT MAY HAVE EXISTED AS TO THE DOCUMENTS THEY PRODUCED TO CONGRESS.

With regard to the documents LANS and the University provided to Congress, New Mexico law governs whether the attorney-client privilege was waived, see Tompkins v. R.J. Reynolds Tobacco Co., 92 F. Supp. 2d at 75 (applying state law in diversity case to determine whether a party producing documents to Congress waived the attorney-client privilege), and federal law governs whether the attorney work-product protection was waived, see Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d at 702 n.10.  The Court finds persuasive at least some of the reasoning articulated in United States v. Philip Morris, Inc., Tompkins v. R.J. Reynolds Tobacco Co., and Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris.  Applying those cases' rationales, rule 11-511, and the voluntary-disclosure-waives-work-product protection rule to this case, the Court finds

that LANS and the University waived any privileges that may have existed as to the documents they produced to Congress when they produced them to Congress.

LANS and the University have not demonstrated that they protested or attempted to contest Congress' document request.  To the contrary, LANS and the University have asserted that "the University could not simply ignore Congress's demands for documents or otherwise resist its command.  A challenge would have been fruitless anyway because of Congress's criminal contempt powers."  Response at 16.  LANS and the University have also submitted that their status as contractors of the federal government limited their ability to contest a congressional document request.  See February 5 Transcript at 67:10-18 (Bieg).

The Court need not decide, as some courts have, that to preserve the attorney-client privilege and/or the work-product protection, a party resisting discovery must go to the point of risking contempt of Congress.  According to Judge Scullin's articulation of the applicable standard, to maintain the privileged status of the documents at issue, LANS and the University "must show not only what steps [they] took to challenge the congressional subpoena, but also that those steps represent the fullest extent of options available."  Tompkins v. R.J. Reynolds Tobacco Co., 92 F. Supp. 2d at 77-78 (stating that, to maintain the privileged status of documents presented to Congress, "a party may need to risk standing in contempt by refusing to comply with the subpoena, thereby causing the legislators to seek a contempt citation . . . .").  See Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, 35 F. Supp. 2d at 594-95 ("In short, a party must do more than merely object to Congress' ruling.  Instead, a party must risk standing in contempt of Congress.").  While the Court agrees that the objecting party must show what steps it took to protect the attorney-client privilege and work-product protection, the Court here need not decide whether LANS and the University must have gone so far as to risk contempt.  The Court need only decide whether LANS'

and the University's production to Congress was voluntary or coerced.

Here, the Court believes the production was voluntary.  LANS and the University do not represent that they even objected to Congress' request for documents, let alone contested it to the fullest extent possible.  Moreover, the Court does not believe that the status of LANS and the University as federal contractors helps them here.  If anything, that LANS and the University are, and have been, contractors that routinely deal with administrative agencies and Congress should have placed them in a position to pursue various means of contesting Congress' request in this instance.  See United States v. Philip Morris Inc., 212 F.R.D. at 426 (finding that the defendants' "failure to make more than a minimal effort to convince the Chairman and Committee to recognize their privilege claims is particularly telling given that Defendants and their attorneys were highly knowledgeable and experienced in dealing with Congress").  Pursuant to rule 11-511, LANS and the University waived the attorney-client privilege when they voluntarily disclosed the documents to Congress.  See N.M.R.A. 11-511 (providing that the attorney-client privilege is waived when the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication).  LANS' and the University's voluntary production of the documents to Congress also served to waive the work-product protection.  See In re Qwest Commc'ns Int'l, Inc., 450 F.3d at 1186 (stating that the voluntary production of documents during discovery waives the work-product protection).  The Court thus concludes that the attorney-client privilege and the work-product protection do not shelter the documents LANS and the University provided to Congress.

LANS and the University argue that, if they did waive the attorney-client privilege and work-product protection by producing the documents to Congress, any waiver of the attorney-client privilege and work-product protection does not extend to third parties.  In light of the Tenth Circuit's holding in In re Qwest Communications International Inc., the Court disagrees.  The In re Qwest

-20-

court determined whether Qwest Communications International Inc. waived the attorney-client privilege and work-product protection, as to third-party litigants, by releasing privileged and protected materials to federal agencies during the course of the agencies' investigation of Qwest. See In re Qwest Commc'ns Int'l, Inc., 450 F.3d at 1181.  After examining the positions of the other Circuit Courts of Appeals on the issue of selective waiver, and finding that a majority of circuits had rejected selective waiver in both the attorney-client privilege and work-product doctrine contexts, the Tenth Circuit, "having [also] considered the purposes behind the attorney-client privilege and the work-product doctrine," held that the record was "not sufficient to justify adoption of a selective waiver doctrine as an exception to the general rules of waiver upon disclosure of protected material." Id. at 1187-92.  LANS and the University attempt to distinguish this case from In re Qwest Communications International Inc. by pointing out that Qwest is not a government contractor.  See February 5 Transcript at 66:3-7 (Bieg).  The Court does not see any basis, however, for such distinction in the rule.  The Tenth Circuit's rationale appears to the Court to apply equally to company-agency, contractor-agency, and contractor-Congress disclosures.  See United States v. Mass. Inst. of Tech., 129 F.3d 681, 686 (1st Cir. 1997)(finding waiver as to a third party where a party argued "that the [prior] disclosure to the [] agency was not 'voluntary' because of the practical pressures and the legal constraints to which it was subject as a government contractor").  The Court concludes that LANS' and the University's production to Congress waives the attorney-client privilege and work-product protection as to CBS.

**B.   LANS AND THE UNIVERSITY CANNOT WAIVE THE ATTORNEY-CLIENT PRIVILEGE FOR SOME DOCUMENTS WHILE ASSERTING THE PRIVILEGE FOR OTHERS THAT RELATE TO THE SAME SUBJECT MATTER, BUT THE WORK-PRODUCT PROTECTION MAY OTHERWISE SHELTER DOCUMENTS THAT SUBJECT-MATTER WAIVER WOULD MAKE DISCOVERABLE.**

As discussed above, the Court believes that the New Mexico courts would adopt subject-matter waiver if confronted with the issue, but also believes that not applying subject-matter to the work-product protection is most faithful to that doctrine's underlying purpose.  Accordingly, documents that may be within the scope of the attorney-client privilege subject-matter waiver are discoverable, but the work-product protection may still shelter documents that would fall within a subject-matter waiver of the attorney-client privilege.

The record before the Court counsels it to find that subject-matter waiver is applicable to privileged documents.  LANS and the University have produced several documents relating to Lillian Anaya and her purchasing activities that would otherwise be subject to the attorney-client privilege.  See Supplemental Brief in Support of Defendant CBS Broadcasting, Inc.'s Motion to Compel, filed February 9, 2007 (Doc. 81)("CBS' Supplement"), Exhibits 1-4; Appendix of Sealed Exhibits to Motion and Memorandum of Law in Support of Defendant CBS Broadcasting, Inc.'s Motion to Compel, filed October 25, 2006 (Doc. 30)("CBS' Appendix to Motion to Compel"), Exhibit I, Privilege Log.  Moreover, the record demonstrates that LANS and the University have produced documents related to some specific issues, but have withheld others relating to the same issues.  For example, LANS and the University have produced a document concerning media strategy and talking points, which is labeled as a "Privileged Lawyer-Client Communication," but they list a document entitled "Call from Adam Rankin (Media Query Re Walp/Doran IG Investigation)" in the Privilege Log, asserting attorney-client privilege and work-product protection.

-22-

See CBS' Supplement, Exhibit 4, E-mail From Bruce Herr to Rich Marquez (dated June 26, 2003);

CBS Appendix to Motion to Compel, Exhibit I, Privilege Log at 16.  This particular Privileged

Lawyer-Client Communication is relatively detailed.  In this particular instance, LANS' and the

University's voluntary disclosure of the document concerning media strategy and talking points

would seem to, by itself, create a subject-matter waiver with a scope encompassing the document

regarding Rankin.  "It is well-established that 'voluntary disclosure of the content of a privileged

attorney communication constitutes waiver of the privilege as to all other such communications on

the same subject.'"  Edwards v. Whitaker, 868 F. Supp. at 229 (quoting Weil v. Inv./Indicators,

Research & Mmgt., 647 F.2d at 24).

The Court finds that the scope of the subject-matter waiver here encompasses all of the

privileged documents relating to investigations of Lillian Anaya and her purchasing activities.

Given that CBS requested, and LANS and the University produced, several otherwise privileged

documents relating to Lillian Anaya and her purchasing activities and that LANS and the University

defined the scope of their waiver as waiving "attorney-client and work-product protections for

documents that reflect the Regents' investigation of the All Mustang charges and other alleged

improper purchasing activity by Lillian P. Anaya," see Response at 13, the Court believes that

defining the waiver's scope as such is appropriate.  The Court also believes that the interest of

justice supports defining the scope of the waiver in this manner.

**IT IS ORDERED** that Motion and Memorandum of Law in Support of Defendant CBS

Broadcasting Inc.'s Motion to Compel is granted in part and denied in part.  The parties must

proceed with discovery in a manner that comports with the rulings the Court made at the February

5, 2007 hearing and that are restated and adopted herein.  LANS and the University must produce

the documents they provided to Congress.  To the extent that CBS seeks documents outside of those

LANS and the University produced to Congress, LANS and the University must produce privileged documents relating to investigations of Lillian Anaya and her purchasing activities, which the attorney work-product doctrine does not shelter.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

John W. Boyd
Michael Lee Goldberg
Freedman Boyd Daniels Hollander Goldberg & Ives PA
Albuquerque, New Mexico

-- and --

Todd M. Lopez
Jesse A. Boyd
Lopez & Sakura LLP
Santa Fe, New Mexico

  *Attorneys for the Plaintiffs*

John B. Pound
Long, Pound & Komer, P.A.
Santa Fe, New Mexico

-- and --

Michael L. Raiff
Marc A. Fuller
Thomas S. Leatherbury
William D. Sims, Jr.
Vinson & Elkins L.L.P.
Dallas, Texas

  *Attorneys for Defendants CBS Broadcasting. Inc. and*
  *Emmis Communications, Corp.*

Kirk R. Allen
Matthew S. Rappaport
Miller Stratvert PA

*Attorneys for Defendants AMP Parts and Performance
a division of Tri-City Auto Sales, Inc., and Thomas Thompson
in his official and individual capacities*

Bruce Hall
Theresa W. Parrish
Rodey Dickason Sloan Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

James P. Bieg
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Santa Fe, New Mexico

*Attorneys for the Los Alamos National Security, L.L.C. and
the Regents of the University of California*

Pablo Prando
Los Alamos National Laboratory
Los Alamos, New Mexico

*Attorney for the Los Alamos National Security, L.L.C.*