# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LILLIAN ANAYA and MEL ANAYA,

       Plaintiffs,

vs.                                     No. CIV 06-476 JB/KBM

CBS BROADCASTING, INC., SHARYL
ATTKISSON, EMMIS COMMUNICATIONS
CORP., AMP PARTS and PERFORMANCE,
a division of TRI-CITY AUTO SALES, INC., and
THOMAS THOMPSON in his official and
individual capacities,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Lillian Anaya's Motion for an Order

Compelling Discovery Responses from Defendants CBS Broadcasting Inc. and Sharyl Attkisson,

filed March 9, 2007 (Doc. 94)("Motion").  The Court held a hearing on this motion on May 16,

2007.  The primary issue is whether the Court should order Defendant CBS Broadcasting, Inc.

("CBS") to produce for Plaintiffs Lillian and Mel Anaya: (i) the "Legal Issues" Section of the 1999

CBS News Standards; (ii) the October 8, 2003 e-mail exchange between Defendant Sharyl Attkisson

and CBS Assistant General Counsel Nicholas Poser; and (iii) a series of communications and

documents relating to CBS' response to an October 9, 2003 letter from the University of California

("University") concerning a news report about Los Alamos National Laboratory ("LANL").

Because the Court finds that the discovery the Anayas seek is relevant or likely to lead to admissible

evidence, and that the attorney-client privilege and attorney work-product doctrine do not shield all

of the discovery sought, the Court will grant the motion in part and deny it in part.

## FACTUAL BACKGROUND

The underlying circumstances of this case were documented in the Court's May 16, 2007 Memorandum Opinion and Order.  See Memorandum Opinion and Order at 2-3, filed May 16, 2007 (Doc. 112).  This Memorandum Opinion and Order incorporates the May 16, 2007 Memorandum Opinion and Order's discussion of the factual background of this case by reference here.

## PROCEDURAL BACKGROUND

The Anayas filed their Complaint for Violation of the California Information Practices Act, Defamation, Negligence, Breach of Contract, Constructive Discharge, Breach of the Implied Covenant of Good Faith and Fair Dealing, Intentional Infliction of Emotional Distress, False Light Invasion of Privacy, Appropriation of Name and Likeness, Fraud, Prima Facie Tort, and Loss of Consortium on August 17, 2005 in the First Judicial District Court of the State of New Mexico.  See Notice of Removal, Exhibit A, filed June 8, 2006 (Doc. 1).  The Anayas' case was removed to this Court on June 8, 2006.  See id. at 1.  The parties submitted the Provisional Discovery Plan on August 9, 2006 (Doc. 8).  On August 17, 2006, the Anayas served their first set of interrogatories and requests for production on CBS and Attkisson.  The Anayas served their revised version of their first set of interrogatories and requests for production on August 21, 2006.

### 1.    The Discovery at Issue.

The Anayas' Request for Production No. 3 requests CBS' standards of conduct, ethics rules, and guidelines applicable to news correspondents.  See Motion, Exhibit 1, Defendants CBS Broadcasting Inc. and Sharyl Attkisson's Objections and Responses to Plaintiff Lillian Anaya's Amended First Set of Requests for Production of Documents at 5 ("Objections"); Memorandum of Points and Authorities in Support of Plaintiff Lillian Anaya's Motion for an Order Compelling Discovery Responses from Defendants CBS Broadcasting Inc. and Sharyl Attkisson at 5, filed

March 9, 2007 (Doc. 95)("Memo"). The Anayas' Request for Production No. 4 seeks all documents identified in response to Plaintiffs' interrogatories and any documents that confidential sources provided to Attkisson. See Objections at 5; Memo at 5. The Anayas' Request for Production No. 5 asks for internal memoranda and correspondence relating to any of the broadcasts that mentioned Lillian Anaya or the alleged purchase of the Mustang. See Objections at 6; Memo at 5-6.

**2.       CBS' Responses to the Anayas' Discovery Requests.**

On October 9, 2006, CBS and Attkisson served their objections and responses to the Anayas' revised first set of interrogatories and requests for production. See Motion at 2. In responding to the Anayas' discovery requests, CBS and Attkisson objected generally to interrogatories and requests seeking information and documents that the attorney-client privilege and attorney work-product doctrine protect. See id. at 2.

Dissatisfied with CBS' and Attkisson's responses and their objections, the Anayas informally attempted, pursuant to local civil rule 7.1(a), to resolve their concerns. See id. Among the Anayas' concerns was that, while CBS and Attkisson withheld production of a number of documents based on the attorney-client privilege and the attorney work-product doctrine, there was no privilege log. See id.

On November 22, 2006, CBS and Attkisson served on the Anayas supplemental responses to their first set of interrogatories and requests for production. See id. After further informal efforts to resolve disagreements about the adequacy of CBS' and Attkisson's responses, on December 22, 2006, CBS and Attkisson served on the Anayas a second set of supplemental responses to their first set of interrogatories and requests for production. See id. The parties continued to attempt to resolve the issue of the privilege log informally and, on January 12, 2007, CBS and Attkisson produced a privilege log. See id.; id. at Exhibit 2, CBS Broadcasting Inc. and Sharyl Attkisson's

-3-

Privilege Log ("Log 1").

The January 12, 2007 privilege log inadequately described the documents for which CBS and Attkisson are asserting the attorney-client privilege and/or work-product protection. See Log 1. The privilege log also did not provide enough information to support CBS' and Attkisson's assertions of privilege and protection. See id. As a result of the parties' attempts to resolve these deficiencies, on January 24, 2007, CBS and Attkisson served a revised version of the privilege log. See Motion, Exhibit 3, CBS Broadcasting Inc. and Sharyl Attkisson's Privilege Log ("Log 2").

The January 24, 2007 privilege log was also inadequate and, as a result of further discussions between the parties, CBS and Attkisson produced a third version of the privilege log on February 14, 2007. See Motion, Exhibit 4, CBS Broadcasting Inc. and Sharyl Attkisson's Privilege Log ("Log 3"). On March 7, 2007, after deliberation between the parties, CBS and Attkisson produced a fourth privilege log. See Motion, Exhibit 5, CBS Broadcasting Inc. and Sharyl Attkisson's Privilege Log ("Log 4"). Besides asserting the attorney-client privilege for sections IV-1 through IV-7 of the CBS News Standards, rather than for sections II-6, II-7, II-8, II-9, II-11, and IV-1 through IV-7, changing two document descriptions from "Email" to "Email regarding script," and providing more detail to the "Recipient" column, there is no appreciable difference between the January 12, 2007 privilege log and the March 7, 2007 privilege log. See Log 1; Log 4.

At line "A" of the March 7, 2007 privilege log, CBS and Attkisson assert that sections IV-1 to IV-7 of the CBS News Standards are privileged attorney-client communications. See Log 4. Beyond the assertion that the author of those sections of the document was the "CBS Legal Department," however, CBS does not substantiate its privilege assertion. Id. CBS agrees that other sections of its News Standards are not privileged and has abandoned its contention that the attorney work-product doctrine also protects the document. See id.; Log 1; Defendants CBS Broadcasting

-4-

Inc. and Sharyl Attkisson's Response to Plaintiffs' Motion to Compel at 3-4, filed April 20, 2007 (Doc. 104)("Response").  The portions of the News Standards for which CBS still asserts the attorney-client privilege come from the "Legal Issues" section of the document, which Mr. Poser principally authored.  Response at 4.  Line "A" of the March 7, 2007 privilege log also states that the portions of the News Standards for which CBS asserts protected status pursuant to the attorney-client privilege were distributed to "CBS reporters and editors, and certain News Division personnel."  Log 4.

At lines "B" and "C" of the March 7, 2007 privilege log, CBS asserts that an October 8, 2003 e-mail exchange between Attkisson and Mr. Poser constitutes two privileged attorney-client communications.  See Log 4.  The description given for the e-mail from Attkisson to Mr. Poser is the same as that provided for the e-mail from Mr. Poser to Attkisson: "Email regarding script."  Log 4.

The same description is used to identify the documents listed on lines "D" through "Y" and "AA" of the March 7, 2007 privilege log: "Email regarding CBS response to Lab's October 9, 2003 letter."  Log 4.  According to the March 7, 2007 privilege log, all of the e-mails identified on lines "D" through "Y" and "AA" were authored between October 9, 2003 at 6:51 p.m. and October 17, 2003 at 8:16 a.m.  See Log 4.  CBS contends that the attorney-client privilege and attorney work-product doctrine protects these communications and documents.  See Log 4.

The March 7, 2007 privilege log indicates that the documents identified at lines "E," "F," "I," "M" through "O," "Q" through "S," and "U" through "Y" were distributed to numerous individuals.  These individuals include Attkisson, Mr. Poser, then CBS News president Andrew Heyward, Heyward's secretary Mary Gera, CBS Washington Bureau Chief Janet Leissner, senior CBS News producer Jim McGlinchy, then CBS News executive producer Jim Murphy, and CBS

producer Allyson Ross Taylor.  See Response at 10.

On March 9, 2007, the Anayas filed their motion to compel.  See Doc. 94.  The Anayas request, pursuant to rule 37(a) of the Federal Rules of Civil Procedure and local civil rule 37.1 of the United States District Court for the District of New Mexico, that the Court order CBS and Attkisson to produce the "Legal Issues" Section of the 1999 CBS News Standards (Log 4: Line A), the October 8, 2003 e-mail exchange between Attkisson and Mr. Poser (Log 4: Lines B-C), and the series of communications and documents relating to CBS' response to the October 9, 2003 letter from the University (Log 4: Lines D-Y, AA).  See Motion at 1; Memo at 7-16.  The Anayas also argue that CBS' and Attkisson's March 7, 2007 privilege log is inadequate.  See Memo at 1.  The parties agree that further informal resolution efforts concerning discovery would not be fruitful.  See Motion at 3.  CBS and Attkisson oppose the Anayas' motion.  See Motion at 4.

## LAW REGARDING DOCUMENT DISCOVERY

While discovery in federal court is very broad, the attorney-client privilege and the attorney work-product doctrine set boundaries on what litigants can obtain.  In a diversity case, state law governs the scope of the attorney-client privilege, whether there has been a waiver, and the scope of any waiver.  Federal law, however, continues to govern all issues related to the work-product doctrine.

### 1.    Scope of Discovery.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence.

Fed. R. Civ. P. 26(b)(1).  Courts should liberally construe the scope of discovery under rule 26; "the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case."  Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 237 F.R.D. 618, 621 (N.D. Cal. 2006)(citing Oakes v. Halvorsen Mar. Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998)).  The attorney-client privilege and work-product protection limit, however, the broad scope of permissible discovery.  See Bd. of Trustees of Leland Stanford Junior University v. Roche Molecular Sys., Inc., 237 F.R.D. at 621-22.

## 2.  **Attorney-Client Privilege.**

"The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."  Trammel v. United States, 445 U.S. 40, 51 (1980).  The privilege's purpose is "to encourage clients to make full disclosure to their attorneys."  Fisher v. United States, 425 U.S. 391, 403 (1976).  Pursuant to rule 501 of the Federal Rules of Evidence, state law supplies the rules concerning attorney-client privilege in diversity cases.  See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 699 (10th Cir. 1998).

Under New Mexico law, the attorney-client privilege applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client."  Bd. of Comm'rs of Dona Ana County v. Las Cruces Sun News, 2003-NMCA-102, ¶ 25, 76 P.3d 36, 44; N.M.R.A.11-503(B).  The party asserting the attorney-client privilege bears the burden of demonstrating that it applies and that it has not been waived.  See Pina v. Espinoza, 2001-NMCA-055, ¶ 24, 29 P.3d 1062, 1069 (stating that the party asserting attorney-client privilege must demonstrate the attorney-client privilege's applicability)(citing State v. Gallegos, 92 N.M. 370,

378, 588 P.2d 1045, 1053 (Ct. App.1978)); United Nuclear Corp. v. Gen. Atomic Co., 96 N.M. 155, 217, 629 P.2d 231, 293 (1980)("The bald assertion that production of the requested information would violate a privilege (provided by law) is not enough.  The party resisting discovery has the burden to clarify and explain its objections and to provide support therefor.  General objections without specific support may result in waiver of the objections.")(internal quotations omitted).

"[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege."  Motley v. Marathon Oil Co., 71 F.3d 1547, 1550-1551 (10th Cir. 1995).  "Information is not privileged simply because it comes from an attorney."  Burton v. R.J. Reynolds Tobacco Co., 170 F.R.D. 481, 485 (D. Kan. 1997). Channeling work through a lawyer rather than having non-legal personnel perform it does not provide a basis for claiming attorney-client privilege.  See id.  An in-house counsel's communications regarding business matters, management decisions, and business advice, which neither solicit or predominantly deliver legal advice, are not privileged.  See 6 James Wm. Moore, Moore's Federal Practice § 26.49[4], at 26-182 (3d ed. 1997).  Including an attorney as a "cc" addressee or on the distribution list of an interoffice e-mail communication sent to several people does not transform the e-mail into a privileged attorney-client communication.  See In re Gabapentin Patent Litig., 214 F.R.D. 178, 186 (D.N.J. 2003).

### 3.   Work-Product Protection.

In diversity cases, rule 26(b)(3) of the Federal Rules of Civil Procedure governs work-product issues.  See Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d at 702 n.10.  Rule 26(b)(3) states:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under . . . this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the

-8-

other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).  The attorney work-product protection is based on the recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495, 510 (1947).  "[T]he work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." Citizens Progressive Alliance v. U.S. Bureau of Indian Affairs, 241 F. Supp. 2d 1342, 1358 (D.N.M. 2002)(Smith, Magistrate J.)(citing United States v. Nobles, 422 U.S. 225, 238 (1975)).

"Ordinary work product generally refers to materials that are gathered at the request of an attorney in anticipation of litigation.  This type of work product receives less protection than opinion work product.  Opinion work product is, basically, the mental impressions of the attorney." Sinclair Oil Corp. v. Texaco, Inc., 208 F.R.D. 329, 334 (N.D. Okla. 2002).  The work-product protection includes not only the attorney's product, but also the product of the attorney's agents. See United States v. Nobles, 422 U.S. at 238-39 ("[T]he doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself."); Alexander v. FBI, 192 F.R.D. 12, 18 (D.D.C. 2000)("The caselaw dealing with attorneys' investigators shows that they should generally be afforded the same protection as the attorneys for whom they work.").

The party asserting the work-product protection has the burden of demonstrating that it applies and that it has not been waived.  See Kovacs v. Hershey Co., No. 04-cv-01881, 2006 WL

2781591, at *10 (D. Colo. September 26, 2006).  A blanket assertion that the work-product doctrine

applies in insufficient to meet that burden.  See Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266

(10th Cir. 1995).  For the work-product doctrine to apply, the asserting party must show that the

documents or materials were prepared in anticipation of litigation by or for a party or that party's

representative.  See Fed. R. Civ. P. 26(b)(3).  Litigation need not necessarily be imminent as long

as the primary motivating purpose behind the creation of the document was to aid in possible future

litigation.  See Fox v. Cal. Sierra Fin. Servs., 120 F.R.D. 520, 524 (N.D. Cal. 1988)("There is no

requirement that the litigation have already commenced in order for the work-product doctrine to

be operative, however, there must be more than a remote possibility of litigation.").

If the party asserting the work-product protection establishes entitlement to the protection,

rule 26(b)(3) allows production of attorney work-product materials "only upon a showing that the

party seeking discovery has substantial need of the materials in the preparation of the party's case

and that the party is unable without undue hardship to obtain the substantial equivalent of the

materials by other means."  Fed. R. Civ. P. 26(b)(3).

### 4. **Privilege Log**.

Rule 26(b)(5) of the Federal Rules of Civil Procedure governs privilege logs.  Rule 26(b)(5)

states:

> When a party withholds information otherwise discoverable under these rules by
> claiming that it is privileged or subject to protection as trial preparation material, the
> party shall make the claim expressly and shall describe the nature of the documents,
> communications, or things not produced or disclosed in a manner that, without
> revealing information itself privileged or protected, will enable other parties to assess
> the applicability of the privilege protection.

Fed. R. Civ. P. 26(7).  "The law is well settled that failure to produce a privilege log or production

of an inadequate privilege log may be deemed waiver of the privilege."  Thelen Reid & Priest LLP

v. Marland, No. C 06-2071, 2007 WL 578989, at *9-10 (N.D. Cal.)(citing Burlington N. & Santa

Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142 (9th Cir.2005)).

**ANALYSIS**

The parties continue to dispute whether the following three categories of documents are

discoverable: (i) the "Legal Issues" Section of the 1999 CBS News Standards; (ii) the October 8,

2003 e-mail exchange between Attkisson and Mr. Poser; and (iii) the series of communications and

documents relating to CBS' response to the October 9, 2003 letter from the University.  It is not

clear to the Court that the March 7, 2007 privilege log adequately describes the materials being

withheld or substantiates the privileged and protected status claimed.  Because the Court believes

that the condition of the privilege log raises a number of legitimate questions concerning the validity

of CBS' and Attkisson's assertions of the attorney-client privilege and attorney work-product

doctrine with respect to the disputed documents, the Court accepted CBS' and Attkisson's offer to

provide it with the documents at issue for in camera review.  The Court concludes that the attorney-

client privilege and the attorney work-product protection do not protect some portions of the

disputed documents.  The Court will therefore, after redacting material it finds privileged, make

available the documents identified on lines "A," "B," "C," and "D" through "Y" and "AA" of the

March 7, 2007 privilege log.

**I.     THE "LEGAL ISSUES" SECTION OF THE 1999 CBS NEWS STANDARDS
        CONSTITUTES, ALMOST IN ITS ENTIRETY, A PRIVILEGED ATTORNEY-
        CLIENT COMMUNICATION.**

The Anayas argue that CBS and Attkisson do not substantiate their assertion that sections

IV-1 through IV-7 of the CBS News Standards are privileged.  See Memo at 8.  While CBS and

Attkisson might have done a better job of supporting their position in their privilege logs, the Court,

after viewing the disputed document in camera, finds that the attorney-client privilege protects most

-11-

of it.  The "Legal Issues" section provides legal advice with respect to topics such as libel, revealing the identifies of confidential sources, and the propriety of using hidden cameras.  CBS' in-house legal staff and, principally, Mr. Poser, CBS' Assistant General Counsel, authored the "Legal Issues" section.  See  Declaration of Nicholas E. Poser in Support of Defendants CBS Broadcasting, Inc. and Sharyl Attkisson's Response to Plaintiffs' Motion to Compel ¶ 4, at 2 (executed April 18, 2007), filed April 20, 2007 (Doc. 105)("Poser Declaration").  CBS' lawyers wrote the "Legal Issues" section to provide CBS News reporters, producers, editors, and management personnel occupation-relevant legal advice. See id. ¶ 5, at 2.  Pursuant to N.M.R.A. 11-503(B), communications made for the purpose of facilitating the rendition of professional legal services to a client are privileged.  See N.M.R.A. 11-503(B).  Given the purpose, subject matter, and authors of the "Legal Issues" section, the Court concludes that the substance of sections IV-1 through IV-7 of the CBS News Standards is privileged.

The Anayas also contend that, to the extent the "Legal Issues" section is privileged, its privileged status has been waived.  See Memo at 10.  The Anayas assert that CBS waived the privilege as to the CBS News Standards, including the "Legal Issues" section, when it distributed the document to unnamed reporters, producers, and news-division personnel.  See id.  The Court is not prepared, at this moment, to accept that position.  "Communications which reflect advice given by counsel to a corporation do not lose their privileged status when they are shared among corporate employees who share responsibility for the subject matter of the communication."  Urban Box Office Network, Inc. v. Interfase Managers, L.P., No. 01 Civ. 8854, 2006 WL 1004472, at *3 (S.D.N.Y. April 18, 2006).  CBS shared the "Legal Issues" section with its employees -- CBS News reporters, producers, editors, and managers -- who encounter and share responsibility for the topics with which the "Legal Issues" section is concerned.  There is no indication that CBS shared the

-12-

"Legal Issues"section with anyone whose duties it did not concern.  To ensure that CBS did not waive the document's privilege by distributing it to persons without responsibility for the topics it covers, the Court will require CBS to submit an affidavit, within ten days of the issuance of this Memorandum Opinion and Order, declaring that the "Legal Issues" section of the CBS News Standards was not submitted to persons who did not have responsibility for the topics it covers and that those who received it treated it as a confidential document.  See FTC v. GlaxoSmithKline, 294 F.3d 141, 147-48 (D.C. Cir. 2002)(Ginsburg, C.J.)("The applicable standard is . . . wether the documents were distributed on a need to know basis ;" it is "[t]he Company's burden [] to show that it limited dissemination of the documents in keeping with their asserted confidentiality;" it is sufficient "that the corporation limited dissemination to specific individuals whose corporate duties relate generally to the contents of the documents.").  If CBS submits an affidavit in accordance with that described above, the Court will find that CBS and Attkisson did not waive the attorney-client privilege as to sections IV-1 through IV-7 of the CBS News Standards.  Conditioned upon receipt of an adequate affidavit from CBS within ten days of the issuance of this Memorandum Opinion and Order, the Court will not compel CBS and Attkisson to provide the CBS News Standards document in its entirety.  The Court will, however, make a redacted version of the "Legal Issues" section -- one from which the privileged portions have been removed -- available to the Anayas.

## II.     THE ATTORNEY-CLIENT PRIVILEGE PROTECTS THE OCTOBER 8, 2003 E-MAIL EXCHANGE BETWEEN ATTKISSON AND MR. POSER.

The Anayas argue that CBS and Attkisson should be compelled to produce the October 8, 2003 e-mail exchange between Attkisson and Mr. Poser because CBS and Attkisson fail to demonstrate that the attorney-client privilege covers the exchange in their privilege logs.  As the Court stated in its discussion of the CBS News Standards, CBS and Attkisson might have done a

better job supporting their assertion of privilege with regard to the October 8, 2003 e-mail exchange in their privilege logs. Nevertheless, after reviewing the contents of the e-mail exchange in camera, the Court finds that the exchange is privileged.

With her October 8, 2003 e-mail to Mr. Poser, sent at 10:36 a.m., Attkisson sought to have her script for the Anaya/LANL story reviewed for legal issues. The language used in Attkisson's e-mail and the portions of the script she includes in it evidence that she made the communication for the purpose of facilitating the rendition of professional legal advice. Similarly, Mr. Poser's October 8, 2003 e-mail to Attkisson, sent at 10:56 a.m., was a communication written in the course of facilitating Mr. Poser's provision of legal advice regarding the proposed script to Attkisson. The Court finds that, because the October 8, 2003 e-mail exchange between Attkisson and Mr. Poser constitutes a confidential communication between an attorney and his client made for the purpose of obtaining and facilitating the provision of legal advice, the October 8, 2003 e-mail exchange is privileged. See N.M.R.A. 11-503(B)(providing New Mexico's attorney-client privilege rule). The Court has been given no reason to believe that the attorney-client privilege has been waived with regard to the October 8, 2003 e-mail exchange. Therefore, other than releasing the dates, times, subject headings, senders, and receivers of the October 8, 2003 e-mails, the Court will not make available, or order to be disclosed, the October 8, 2003 e-mail exchange between Attkisson and Mr. Poser.

## III.  SOME OF THE DOCUMENTS RELATING TO CBS' RESPONSE TO THE UNIVERSITY'S OCTOBER 9, 2003 LETTER ARE PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS.

The Anayas contend that CBS and Attkisson should be compelled to produce the documents identified at lines "D" through "Y" and "AA" of the March 7, 2007 privilege log, because CBS and Attkisson have not established that those documents are privileged attorney-client communications

-14-

or protected attorney work product.  See Memo at 10-14, 15-16.  The Court does not agree completely with the Anayas.  The Court acknowledges that CBS and Attkisson could have supported their position more thoroughly in their privilege logs.  The Court also concludes that the attorney work-product doctrine is inapplicable to the communications and documents relating to CBS' response to the University's October 9, 2003 letter.  The Court also finds, however, that the attorney-client privilege protects certain of those communications and documents from discovery.

### 1.    The Work-Product Doctrine is Inapplicable to the Documents Relating to CBS' Response to the University's October 9, 2003 Letter.

The Anayas argue that the work-product doctrine does not protect the communications and documents relating to CBS' response to the University's October 9, 2003 letter, because attorneys did not prepare many of them and because there is no indication that they contain the mental impressions, conclusions, opinions, or legal theories of an attorney developed in anticipation of litigation.  See Memo at 11-13, 16.  The Court agrees with the Anayas and believes that their latter contention is determinative.

For the work-product doctrine to apply, the asserting party must show that the materials were prepared in anticipation of litigation by or for a party or that party's representative.  See Fed. R. Civ. P. 26(b)(3).  To assert the work-product doctrine, litigation need not be imminent as long as the primary motivating purpose behind the creation of the material was to aid in possible future litigation.  See Fox v. Cal. Sierra Fin. Servs., 120 F.R.D. at 524 ("There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation.").

CBS and Attkisson contend that the October 9, 2003 letter from the University, which the University's internal counsel drafted, makes it "clear that the documents and communications

-15-

relating to CBS's preparation of a response were created in anticipation of litigation."  Response at

7-9.  The Court disagrees.  Other than that counsel for the University authored the October 9, 2003

letter, the letter does not provide any indication that the University perceived a legal issue or legal

dispute.  See Memo, Exhibit 3, Letter from John F. Lundberg to Andrew Heyward at 1-2 (dated

October 9, 2003).  The October 9, 2003 letter from the University does not indicate that litigation

was on the horizon.  See id.  Indeed, the October 9, 2003 letter merely requests that the University

and LANL "be given equal time [and] a fair opportunity to refute [the] story and show . . . ."  Id. at

2.  Because the Court finds that the communications and documents relating to CBS' response to

the University's October 9, 2003 letter were not drafted in anticipation of litigation, the Court

concludes that the work-product doctrine does not protect those materials.

### 2. Certain Documents Relating to CBS' Response to the University's October 9, 2003 Letter Are Not Privileged Communications.

Having reviewed, in camera, the communications and documents identified on lines "D"

through "Y" and "AA" of the March 7, 2007 privilege log, the Court finds that the attorney-client

privilege does not protect materials "E," "F," "G," "I," "K," and "L."  Those communications and

documents either were not authored by or sent to attorneys, were simply "cc'd" to an attorney, were

unreflective of an intent to facilitate the rendition of legal advice, or were some combination thereof.

Pursuant to N.M.R.A. 11-503(B), the attorney-client privilege protects "confidential

communications made for the purpose of facilitating the rendition of professional legal services to

the client."  N.M.R.A. 11-503(B).  "[T]he mere fact that an attorney was involved in a

communication does not automatically render the communication subject to the attorney-client

privilege."  Motley v. Marathon Oil Co., 71 F.3d at 1550-51.  Including a lawyer as a "cc" addressee

or on the distribution list of an interoffice e-mail communication sent to several people does not

-16-

transform the e-mail into a privileged attorney-client communication.  See In re Gabapentin Patent Litig., 214 F.R.D. at 186.

Considering the foregoing, the Court concludes that their nature and/or authors and recipients do not qualify the materials that the March 7, 2007 privilege log identifies as "E," "F," "G," "I," "K," and "L" as communications and documents that the attorney-client privilege protects.  The Court will, therefore, make those documents available to the Anayas.

### 3.       Certain Documents Relating to CBS' Response to the University's October 9, 2003 Letter Are Privileged Communications.

The Court finds, after reviewing the materials relating to CBS' response to the October 9, 2003 letter from the University in camera, that the remainder of the communications and documents identified on lines "D" through "Y" and "AA" -- i.e. those documents other than "E," "F," "G," "I," "K," and "L" -- are protected attorney-client communications.  Those documents either seek, facilitate the rendition of, or provide professional legal advice.  They also include an attorney, Mr. Poser, as either the author or a recipient.  Under New Mexico law, the attorney-client privilege thus protects the remaining communications and documents from discovery.  See N.M.R.A. 11-503(B).

The Court notes also that it does not believe that the privilege has been waived with respect to any of these materials.  "Communications which reflect advice given by counsel to a corporation do not lose their privileged status when they are shared among corporate employees who share responsibility for the subject matter of the communication."  Urban Box Office Network, Inc. v. Interfase Managers, L.P., 2006 WL 1004472, at *3.  The remaining communications and documents were prepared by and/or shared with those persons -- CBS News reporters, producers, editors, and managers -- who were responsible for the segment that engendered the October 9, 2003 letter from the University.  The Court thus finds that the privilege was not waived with respect to the remaining

-17-

documents.  While the Court could find waiver from the inadequacy of CBS' and Attkisson's multiple privilege logs, the Court is not bound to do so, and, because the Court believes that CBS' and Attkisson's privilege logs were produced in good faith, it will not do so.

Accordingly, other than releasing the dates, times, subject headings, authors, senders, and receivers of the materials relating to CBS' response to the University's October 9, 2003 letter, and identified on lines "D" through "Y" and "AA" of the March 7, 2007 privilege log, excluding the communications and documents identified on lines "E," "F," "G," "I," "K," and "L," the Court will not make available the materials relating to CBS' response to the October 9, 2003 letter from the University.

**IT IS ORDERED** that the Plaintiff Lillian Anaya's Motion for an Order Compelling Discovery Responses from Defendants CBS Broadcasting Inc. and Sharyl Attkisson is granted in part and denied in part.  The portions of the "Legal Issues" Section of the 1999 CBS News Standards, the October 8, 2003 e-mail exchange between Attkisson and Mr. Poser, and the series of communications relating to CBS' response to an October 9, 2003 letter from the University that the attorney-client privilege does not protect will be produced to the Anayas.  CBS must submit an affidavit, within ten days of the issuance of this Memorandum Opinion and Order, declaring that the "Legal Issues" section of the CBS News Standards was not submitted to persons who did not have responsibility for the topics it covers and that those who received it treated it as a confidential document.  If CBS does not do so, the Court will require production of the entire "Legal Issues" section of the CBS News Standards.[1]

---

[1] Consistent with this opinion, the Court will file, for view by the Court and counsel for CBS and Attkisson only, the materials CBS must produce to the Anayas.  See Sealed Exhibits to the Court's July 6, 2007 Memorandum Opinion and Order.  CBS is responsible for making available to the Anayas those materials in a manner that comports with the Court's opinion and sealed filing.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Todd M. Lopez
Lopez & Sakura, LLP
Santa Fe, New Mexico

-- and --

Jesse M. Boyd
Santa Fe, New Mexico

-- and --

John W. Boyd
Michael L. Goldberg
Freedman, Boyd, Daniels,
   Hollander & Goldberg, PA
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

John B. Pound
Long, Pound & Komer, PA
Santa Fe, New Mexico

-- and --

Michael L. Raiff
Thomas S. Leatherbury
William D. Sims, Jr.
Marc A. Fuller
Vinson & Elkins, LLP
Dallas, Texas

    *Attorneys for Defendants CBS Broadcasting Inc.,*
       *Emmis Communications, Corp., and Sharyl Atkisson*

-19-

Kirk R. Allen
Matthew S. Rappaport
Anita M. Kelley
Miller Stratvert PA
Albuquerque, New Mexico

*Attorneys for Defendants AMP Parts and Performance,*
  *a division of Tri-City Auto Sales, Inc. and Thomas Thompson*